UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **COTEMAR S.A. DE CV., EXETER MARINE LIMITED AND OCEAN OIL CONSTRUCTION AND SERVICES, S.A.R.L.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 14-342** |
| **MOTOR VESSEL BEAUFORT,** *in rem* | **SECTION: "S" (1)** |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that the Motion to Vacate Rule C Arrest (Doc. #18) filed by Hornbeck Offshore Services, LLC, appearing as the claimant of the HOS BEAUFORT, in rem, is **DENIED**.

**IT IS FURTHER ORDERED** that Hornbeck's motion for attorneys' fees and costs associated with the vessel seizure (Doc. #18) is **DENIED**.

## BACKGROUND

This matter is before the court on a motion to vacate the arrest of the HOS BEAUFORT made under Rule C of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions filed by Hornbeck Offshore Services, LLC ("Hornbeck"), appearing as the claimant of the BEAUFORT, in rem. Hornbeck asserts several arguments to demonstrate that the arrest should be vacated. Specifically, Hornbeck argues that this action should be dismissed on grounds of res judicata, comity, failure to plead a maritime lien under Mexican law or other basis for arrest, and laches.

On June 24, 2011, the BEAUFORT, a United States flagged offshore supply vessel, allied with the SSV IOLAIR, a semi-submersible, catamaran-shaped offshore construction support floatel platform registered in the Marshall Islands, an island country in the Northern Pacific Ocean. At the

time of the allision, the BEAUFORT's first mate, an American merchant marine officer from Florida, was at the helm.  He set the vessel's autopilot, sent the lookout to clean behind the wheelhouse, and feel asleep.  He was awakened when the lookout informed him that the IOLAIR was 50 feet away.  He attempted to avoid the allision, but was unable to do so.  The IOLAIR was stationary along side the AKAL MB platform transferring personnel via crane.  The allision occurred in international waters, 44 miles off the coast of Mexico in the Bay of Campeche, while both vessels were performing work for Pemex Exploración y Producción ("Pemex"), Mexico's state-owned oil company.  The United States Coast Guard and Mexican authorities investigated the incident.

Plaintiff, Exeter Marine Limited, a Bahamian entity, owns the IOLAIR.  Plaintiff, Cotemar S.A. de C.V., a Mexican entity, operates, maintains, manages and has a proprietary interest in the IOLAIR.  Plaintiff, Ocean Oil Construction and Services, S.A.R.L., a Luxembourgian entity, is the IOLAIR's bareboat charterer.

The Beaufort is owned, operated and managed by Hornbeck, Hornbeck Offshore Operators, LLC ("HOOL") and Hornbeck Offshore Services, Inc. ("HOSI"), which are all American corporations, that maintain their headquarters in Covington, Louisiana.  Hornbeck asserts that the BEAUFORT is managed by Mexican entities located in Mexico, Hornbeck Offshore Services de Mexico, S. de R.L. de C.V. ("HOSMEX") and Hornbeck Offshore Operators de Mexico S. de R.L. de C.V. ("HOOMEX"), but the United States Securities and Exchange System indicates that these entities are United States residents with their principal places of business in Louisiana.  The BEAUFORT's Port of Registry is New Orleans, Louisiana.

On October 19, 2011, Hornbeck and HOSMEX filed a petition in Mexico to limit their liability under the 1976 Convention on Limitation of Liability for Maritime Claims (the "1976 Convention"),[1] posted $556,559.33 USD as security, and listed Cotemar as a possible claimant. Cotemar did not appear or make a claim against the fund. Hornbeck, HOOL, and HOOMEX filed a second limitation proceeding in Mexico on April 9, 2012, adding Exeter as a potential claimant. Exeter has not been served in those proceedings.

On December 15, 2011, plaintiffs filed a complaint in the United States District Court for the Southern District of Texas against Hornbeck, HOOL and HOSI, in personam, and the BEAUFORT, in rem,[2] alleging that their negligence, gross negligence and unseaworthiness caused the allision and resulting damage to the IOLAIR. After two years of litigation, the court granted Hornbeck, HOSI and HOOL's motion to dismiss based on forum non conveniens, finding that a Mexican court was the proper forum for the action.[3] Cotemar S.A. de C.V. v. Hornbeck Offshore Servs. Inc., C/A 11-4409 (S.D. Tex. 3/29/13) (Doc. #140).

On February 11, 2014, the BEAUFORT entered United States waters for the first time since plaintiffs filed the Texas action. Thus, on February 13, 2014, plaintiffs filed this action against the BEAUFORT, in rem, alleging that the allision and the resulting damage to the IOLAIR was caused by the BEAUFORT's negligence, gross negligence and unseaworthiness. This court granted

---

[1] The Mexican court issued an injunction prohibiting plaintiffs from arresting the BEAUFORT. However, the United States is not a signatory to the 1976 Convention, and American courts are not bound to defer to foreign limitation proceedings brought under it on international comity grounds. Perforaciones Exploración y. Producción, 356 Fed. Appx. 675, 681 (5th Cir. 2009).

[2] The Texas court did not have jurisdiction over the BEAUFORT, in rem, because it never entered the district so that it could be arrested during the pendency of the litigation.

[3] Plaintiffs' appeal of that decision to the United States Court of Appeals for the Fifth Circuit is currently pending.

3

plaintiffs' motion for the issuance of a warrant of arrest of the Beaufort, in rem, and the vessel was arrested under Rule C of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. Hornbeck moved to vacate that arrest under Rule E(4)(f) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

## ANALYSIS

**A.     Vacating a Vessel Seizure**

Supplemental Rule C permits a plaintiff to initiate an in rem action against a vessel and arrest it to enforce a maritime lien, or "[w]henever a statute of the United States provides for a maritime action in rem or a proceeding analogous thereto." FED. R. CIV. P. SUPP. R. C(1). Supplemental Rule E(4)(f) provides that any party with an interest in property arrested under Supplemental Rule C is "entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with" the rules. Id. at E(4)(f). To meet this burden, the plaintiff must demonstrate that there were "reasonable grounds" for the arrest. Salazar v. ATL. SUN, 881 F.2d 73, 79 (3d Cir. 1989). As explained by the United States Court of Appeals for the Third Circuit in Salazar, "[t]he post arrest hearing is not intended to resolve definitively the dispute between the parties, but only to make a preliminary determination whether there were reasonable grounds for issuing the arrest warrant . . ." Id.

**1.     Reasonable Grounds for the Arrest**

Plaintiffs have demonstrated that there were reasonable grounds for the arrest of the BEAUFORT. Plaintiffs raised a good faith argument that the law of the United States should apply to this matter under which there is a lien against the vessel for damages caused by an allision. See FED. R. CIV. P. SUPP. R. C, Advisory Committee Notes 1966 (the plaintiff may proceed in rem in

suits for collision damages).  The choice-of-law factors for determining which nation's law governs a maritime action were set forth by the Supreme Court of the United States in Lauritzen v. Larsen, 73 S.Ct. 921 (1953), and Hellenic Lines Ltd. v. Rhoditis, 90 S.Ct. 1713 (1970).  The Lauritzen-Rhoditis factors are: (1) the place of the wrongful act; (2) the law of the flag; (3) the allegiance or domicile of the injured seaman; (4) the allegiance of the defendant shipowner; (5) the place where the contract was made; (6) the accessibility of the foreign forum; (7) the law of the forum; and (8) the vessel owner's base of operations.  See Rhoditis, 90 S.Ct. at 1733-34.  The test "is not a mechanical one," and "[t]he significance of one or more of these factors must be considered in light of the national interest served." Id. at 1734.

Without making a definitive determination as to the law applicable to this case, the court notes that the following factors support the application of United States law: the law of the flag of the BEAUFORT, the allegiance of the defendant ship owner, the law of the forum, and the defendant vessel owner's base of operations.  Further, the accessibility of Mexico as a forum for this action is questionable because plaintiffs provided legal support that Mexico does not recognize an in rem action.

The place of the wrongful act supports the application of Mexican law because the allision occurred only 44 miles off the coast of Mexico in that country's Exclusive Economic Zone.  However, the law of the flag of the IOLAIR is the Marshal Islands, the allegiances of the plaintiffs and their bases of operations are in Mexico, the Bahamas and Luxembourg.

Because United States law may apply to this matter, and it provides for a lien against the vessel for damages caused by an allision, plaintiffs have demonstrated that reasonable ground existed for the arrest of the BEAUFORT.

**2. Laches**

Hornbeck argues that plaintiffs' alleged lien against the vessel under United States law cannot serve as a basis for the arrest because the doctrine of laches applies.

Under maritime law, "[l]aches is an equitable doctrine, that if proved, is a complete defense to the action irrespective of whether the analogous state [prescriptive period] has run." Mecom v. Levingston Shipbuilding Co., 622 F.2d 1209, 1215 (5th Cir. 1980). "The existence of laches is a question of fact to be decided by the court after weighing the equities as they appear from the facts of each case." Esso Intern., Inc. v. S.S. Captain John, 443 F.2d 1144, 1150 (5th Cir. 1971) (citing McDaniel v. Gulf & S. Am. S.S. Co., 228 F.2d 189 (5th Cir. 1955)). When analyzing a laches defense in a maritime action, the United States Court of Appeals for the Fifth Circuit employs a three-part test: (1) whether there was a delay in asserting a right or claim; (2) whether the delay was excusable; (3) whether the delay resulted in undue prejudice to the party against whom the claim is asserted. See W. Wind Afr. Line, Ltd. v. Corpus Christi Marine Servs., Co., 834 F.2d 1232, 1234 (5th Cir. 1988) (citing Mecom, 622 F.2d at 1215).

The court must first ascertain whether there was a delay in asserting the claim under the prescriptive period for the most analogous state statute. See Mecom, 622 F.3d at 1215. If the plaintiff files its claim within the analogous state prescriptive period, the defendant must demonstrate inexcusable delay in filing, and resulting prejudice to prove its laches defense. Id. However, if the analogous state prescriptive period runs prior to the plaintiff's filing its claim, the plaintiff must prove an absence of prejudice or an excuse for the delay to defeat the defendant's laches defense. Id.

The second element considered in evaluating a laches defense is whether the delay is excusable. Id. Delay in filing may be excused when the party against whom the claim is made has notice of the claim and ample opportunity to investigate. W. Wind Afr. Line, 834 F.2d at 1234.

The third factor considered in evaluating a laches defense is whether the defendant was unduly prejudiced by the plaintiff's inexcusable delay. To establish undue prejudice, the defendant must be subjected "to a disadvantage in asserting and establishing his claimed right to defense." Id. (citing Point Landry Inc. v. Ala. Dry Dock & Shipbuilding Co., 261 F.2d 861 (5th Cir. 1958)). "[L]oss of records, destruction of evidence, fading memories, or unavailability of witnesses," may constitute prejudice sufficient to bar a claim under laches. Cornetta v. United States, 851 F.2d 1372, 1378 (Fed. Cir. 1988).

In this case, the doctrine of laches does not apply because Hornbeck was not prejudiced. Hornbeck knew of the allision and the IOLAIR's resulting damage shortly after the incident occurred. Plaintiffs filed the Texas action in December 2011, and the parties engaged in litigation and discovery until that case was dismissed on forum non conveniens grounds in March 2013. Plaintiffs arrested the BEAUFORT the first time it returned to the Untied States after the Texas litigation was filed. Because Hornbeck has extensive knowledge of this case, the prejudice prong of the laches analysis cannot be satisfied. Therefore, defendant's motion to vacate the arrest is DENIED.[4]

---

[4] The court finds that it is inappropriate to address the potential res judicata effect of the forum non conveniens dismissal of the Texas action while that issue is being considered on appeal at the United States Court of Appeals for the Fifth Circuit because a reversal of that order would affect the validity of this court's finding on res judicata.

### C.     Attorneys' Fees and Costs

Hornbeck argues that it is entitled to attorneys fees and costs because plaintiffs' pursued the arrest in bad faith. Hornbeck's motion is DENIED because this court has determined that plaintiffs had reasonable grounds for the arrest.

### CONCLUSION

**IT IS HEREBY ORDERED** that the Motion to Vacate Rule C Arrest (Doc. #18) filed by Hornbeck Offshore Services, LLC, appearing as the claimant of the HOS BEAUFORT, in rem, is **DENIED.**

**IT IS FURTHER ORDERED** that Hornbeck's motion for attorneys' fees and costs associated with the vessel seizure (Doc. #18) is **DENIED**.

New Orleans, Louisiana, this   3rd   day of April, 2014.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**