## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**COTEMAR S.A. de C.V., EXETER MARINE LIMITED AND OCEAN OIL CONSTRUCTION AND SERVICES, S.A.R.L.**

**CIVIL ACTION**

**VERSUS**

**NO:  14-342**

**Motor Vessel BEAUFORT,** *in rem*

**SECTION: "S" (1)**

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that Norwegian Hull Club's Motion to Approve Assignment of the Letter of Undertaking (Doc. #122) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Dismiss (Doc. #90) is **GRANTED**, and plaintiffs' claims against the M/V HOS BEAUFORT, *in rem*, are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that the M/V HOS BEAUFORT's Motion to Dismiss for *Res Judicata* (Doc. #61) is **GRANTED**, and this matter is **DISMISSED WITHOUT PREJUDICE.**

## BACKGROUND

This matter is before the court on Norwegian Hull Club's motion to approve the assignment of the letter of undertaking.  Also before the court is a motion to dismiss filed by plaintiffs, Cotemar S.A. de C.V., Exeter Marine Limited, and Ocean Oil Construction and Services, S.A.R.L. (collectively referred to as "the Cotemar interests"), who state that they no longer choose to pursue their *in rem* claims against the M/V HOS BEAUFORT.  Further, this matter is before the court on

a motion to dismiss filed by Hornbeck Offshore Services, LLC ("Hornbeck"), appearing solely as the claimant of the BEAUFORT.[1]

On June 24, 2011, the BEAUFORT, a United States flagged offshore supply vessel, allided with the SSV IOLAIR, a semi-submersible, catamaran-shaped offshore construction support floatel platform registered in the Marshall Islands, an island country in the Northern Pacific Ocean. At the time of the allision, the BEAUFORT's first mate, an American merchant marine officer from Florida, was at the helm.  He set the vessel's autopilot, sent the lookout to clean behind the wheelhouse, and fell asleep.  He was awakened when the lookout informed him that the IOLAIR was 50 feet away. He attempted to avoid the allision, but was unable to do so.  The IOLAIR was stationary alongside the AKAL MB platform transferring personnel via crane. The allision occurred in international waters, 44 miles off the coast of Mexico in the Bay of Campeche, while both vessels were performing work for Pemex Exploración y Producción ("Pemex"), Mexico's state-owned oil company.  The United States Coast Guard and Mexican authorities investigated the incident.

Exeter Marine Limited, a Bahamian entity, owns the IOLAIR.  Cotemar S.A. de C.V., a Mexican entity, operates, maintains, manages and has a proprietary interest in the IOLAIR.  Ocean Oil Construction and Services, S.A.R.L., a Luxembourgian entity, is the IOLAIR's bareboat charterer.

The BEAUFORT is owned, operated and managed by Hornbeck, Hornbeck Offshore Operators, LLC ("HOOL") and Hornbeck Offshore Services, Inc. ("HOSI"), which are all American

---

[1]  Also before the court are: (1) Norwegian Hull Club's Motion to Reopen the Case (Doc. #93); and, (2) Norwegian Hull Club's Motion to Consolidate Civil Action Nos. 14-342 and 15-5718 (Doc. #98). These motions are rendered moot by the court's granting Hornbeck's motion to dismiss.

corporations, that maintain their headquarters in Covington, Louisiana.  Hornbeck asserts that the

BEAUFORT is managed by Mexican entities located in Mexico, Hornbeck Offshore Services de

Mexico, S. de R.L. de C.V. ("HOSMEX") and Hornbeck Offshore Operators de Mexico S. de R.L.

de C.V. ("HOOMEX").  The BEAUFORT's Port of Registry is New Orleans, Louisiana.

On October 19, 2011, Hornbeck and HOSMEX filed a petition in Mexico to limit their

liability under the 1976 Convention on Limitation of Liability for Maritime Claims (the "1976

Convention"),[2] posted $556,559.33 USD as security, and listed Cotemar as a possible claimant.

Cotemar did not appear or make a claim against the fund. Hornbeck, HOOL, and HOOMEX filed

a second limitation proceeding in Mexico on April 9, 2012, adding Exeter as a potential claimant.

Exeter has not been served in those proceedings.

On December 15, 2011, the Cotemar interests filed a complaint in the United States District

Court for the Southern District of Texas against Hornbeck, HOOL and HOSI, *in personam*, and the

BEAUFORT, *in rem*,[3] alleging that their negligence, gross negligence and unseaworthiness caused

the allision and resulting damage to the IOLAIR.  After two years of litigation, the court granted

Hornbeck, HOSI and HOOL's motion to dismiss based on *forum non conveniens*, finding that a

Mexican court was the proper forum for the action. Cotemar S.A. de C.V. v. Hornbeck Offshore

Servs. Inc., C/A No. 11-4409 (S.D. Tex. 3/29/13) (Doc. #140).  The Cotemar interests appealed that

decision to the United States Court of Appeals for the Fifth Circuit.

_____

[2] The Mexican court issued an injunction prohibiting plaintiffs from arresting the BEAUFORT. However, the United States is not a signatory to the 1976 Convention, and American courts are not bound to defer to foreign limitation proceedings brought under it on international comity grounds. Perforaciones Exploración y Producción v. Marítimas Mexicanas, S.A. de C.V., 356 Fed. Appx. 675, 681 (5th Cir. 2009).

[3] The Texas court did not have jurisdiction over the BEAUFORT, *in rem*, because the vessel never entered the district so that it could be arrested during the pendency of the litigation.

On February 11, 2014, the BEAUFORT entered United States waters for the first time since the Cotemar interests filed the Texas action. Thus, on February 13, 2014, the Cotemar interests filed Civil Action No. 14-342 in the United States District Court for the Eastern District of Louisiana against the BEAUFORT, *in rem,* alleging that the allision and the resulting damage to the IOLAIR were caused by the BEAUFORT's negligence, gross negligence and unseaworthiness. This court granted the Cotemar interests' motion for the issuance of a warrant of arrest of the BEAUFORT, *in rem*, and the vessel was arrested under Rule C of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. Hornbeck moved to vacate that arrest under Rule E(4)(f) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions arguing that the arrest was made in bad faith because Mexican law would apply and the action was barred by laches. This court denied Hornbeck's motion to vacate reasoning that the arrest was made in good faith because there was a reasonable possibility that United States law would apply and laches did not apply due to a lack of prejudice to Hornbeck. Thereafter, on April 15, 2014, Steamship Mutual Underwriting Association, Ltd., the insurer of the BEAUFORT, and the Cotemar interests entered into a $15,400,000 letter of undertaking ("LOU") securing the release of the BEAUFORT. The LOU stated that it was entered into "in further consideration of [the Cotemar interests'] refraining from arresting or attaching or otherwise detaining or taking any other action to seize the *Beaufort* to recover for damages" related to the June 24, 2011, incident.

On May 21, 2014, the United States Court of Appeals for the Fifth Circuit issued an Opinion on the Cotemar interests' appeal of the Texas district court's dismissal of the action for *forum non conveniens*. Cotemar S.A. de C.V. v. Hornbeck Offshore Servs., L.L.C., 569 Fed. Appx. 187 (5th Cir. 5/21/2014). The appellate court remanded the matter to the Texas district court for consideration

4

of the litigation's potential untimeliness in the Mexican forum and whether the intervening seizure of the BEAUFORT in the Eastern District of Louisiana affected the *forum non conveniens* analysis. Id.

On July 2, 2014, this court stayed Civil Action No. 14-342 pending the Texas district court's decision on remand.  On remand, the Texas district court considered the questions posed by the appellate court and again dismissed the action for *forum non conveniens*, finding that Mexico was a more appropriate forum. Cotemar S.A. de C.V. v. Hornbeck Offshore Servs., Inc., C/A No. 11-4409 (S.D. Tex. 3/23/2015).  The Cotemar interests appealed that decision.  NHC moved to be substituted as the real party in interest.  The motion was denied. On August 20, 2015, the second appeal was dismissed for failure to prosecute. Cotemar S.A. de C.V. v. Hornbeck Offshore Servs., L.L.C., No. 15-20231 (5th Cir. 8/20/2015).

On September 30, 2015, Hornbeck filed a motion to dismiss Civil Action No. 14-342, arguing that the Texas district court's dismissing the *in personam* action against the Hornbeck entities operates as *res judicata* in the action filed *in rem* against the BEAUFORT.  NHC, which insures the Cotemar interests, moved to intervene and be added as a plaintiff because a dispute arose between it and the insureds causing the Cotemar interests to take no further action in the appeal of the Texas district court's last decision. NHC seeks to recover from the BEAUFORT by subrogation the amount it paid to, or will be required to pay to, the Cotemar interests for their insurance claim related to the allision.  On October 20, 2015, the United States Magistrate Judge granted NHC's motion to intervene.  NHC filed an opposition to Hornbeck's motion to dismiss.

The Cotemar interests also filed a motion to dismiss, which Hornbeck supported. NHC opposed the motion because, if the Cotemar interests' claims are dismissed and NHC is not added

to the LOU, the LOU would be rendered void and there would be no basis for *in rem* jurisdiction. To remedy this situation, the Cotemar interests assigned their rights in the LOU to NHC, and NHC filed a motion to approve the assignment, which Hornbeck opposes.  The Cotemar interests oppose the motion to approve the assignment to the extent that NHC seeks to place conditions on the granting of their motion to dismiss.

## ANALYSIS

### I.      NHC's Motion to Approve the Assignment of the Letter of Undertaking (Doc. #122)

NHC filed a motion seeking the court's approval of the Cotemar interests' assignment of the LOU to NHC.  NHC argues that the LOU is assignable because it does not contain a clause preventing an assignment.  NHC also argues that it was an intended beneficiary of the LOU because it paid the Cotemar interests' attorneys' fees in this matter and is subrogated to any recovery the Cotemar interests may have obtained. NHC states that if the LOU is assigned to it, the Cotemar interests' motion to dismiss can be granted, but NHC asks the court to condition the dismissal on the Cotemar interests' making certain witnesses available for deposition and to producing certain documents in the United States.

The Cotemar interests do not oppose approval of the assignment, but they do oppose conditions being placed on the dismissal of their claims against the BEAUFORT.  The Cotemar interests state that they understand and will fulfill their duty to cooperate with NHC, but that they did not agree to make compliance with that duty a condition of the assignment of the LOU.

Hornbeck opposes the motion to approve the assignment arguing that it is procedurally improper because this is not a declaratory judgment action regarding who can benefit from the LOU.

Hornbeck also argues that NHC's proposed condition requiring the Cotemar interests to participate in the litigation is impossible to fulfill because they are all foreign entities.

A letter of undertaking is a contract between the parties identified therein. Petróleos Mexicanos Refinación v. M/T KING A, 554 F.3d 99, 104 (3d Cir. 2009) (citing Perez & Compañia (Cataluña), S.A. v. M/V MEXICO I, 826 F.2d 1149, 1451 (5th Cir. 1987)).  Generally, the letter of undertaking "becomes a complete substitute for the *res* and the maritime lien is transferred from the vessel to the [letter]." Id. (citations omitted).  Maritime liens and contracts are assignable. See L&L Oil Co., Inc. v. M/V REBEL, 96 F.3d 1445 (5th Cir. 1996); Ambassador Factors v. Rhein-, Maas-, Und See-Schiffahrtskontor GMBH (Vormals Sanara Reedereikontor GMBS), 105 F.3d 1397 (11th Cir. 1997).

The LOU in this case was entered into between the Cotemar interests and Steamship Mutual. There is no non-assignment clause.  The LOU says that it is "subject to the approval of the Court." Thus, the Cotemar interests can assign their rights in this contract to NHC, and it is appropriate for the a court to approve the assignment.  NHC's motion to approve the assignment of the LOU is GRANTED.

## II.     The Cotemar Interests' Motion to Dismiss (Doc. #90)

The Cotemar interests moved to voluntarily dismiss their claims against the BEAUFORT, *in rem*, because they no longer choose to pursue the litigation.  Hornbeck does not oppose.  Now that the LOU has been assigned to NHC, NHC does not oppose the motion, but asks the court to place conditions on the dismissal.  Specifically, NHC seeks an order requiring the Cotemar interests to make certain witnesses available for deposition and to produce certain documents in the United States. The Cotemar interests responded that they understand and will fulfill their duty to cooperate

with NHC, but they did not agree to make compliance with that duty a condition of the assignment. Because the Cotemar interests have represented that they will cooperate with NHC in this litigation, the court declines to impose conditions on the dismissal.  Therefore the Cotemar interests' motion to dismiss is GRANTED, and their claims against the BEAUFORT, *in rem*, are DISMISSED WITHOUT PREJUDICE.

### III.   Hornbeck's Motion to Dismiss for *Res Judicata* (Doc. #61)

Hornbeck argues that the Texas district court's *forum non conveniens* dismissal of the Cotemar interests' *in personam* action against the Hornbeck entities has a *res judicata* effect on this action against the BEAUFORT, *in rem*.  Hornbeck contends that it is in privity with the BEAUFORT, NHC is in privity with the Cotemar interests, and the causes of action in the two suits are the same because they seek damages for the same incident.  Hornbeck also argues that the Texas district court determined that Mexico was a more convenient forum than any forum in the United States, not just Texas.

NHC opposes the motion arguing that the parties are not the same, there was no final decision on the merits in the Texas action, and the Texas action specifically deferred ruling whether the *in rem* action would be barred by *res judicata*.  NHC also argues that the United States Court of Appeals for the Fifth Circuit stated that the *in rem* action in Louisiana would proceed simultaneously with an action in Mexico, and that Mexico would not be an available forum for the *in rem* action because there is no such action under Mexican law.  Further, NHC argues that the Texas district court's ruling cannot apply to the action against the BEAUFORT, *in rem,* because that court did not have jurisdiction over the BEAUFORT, *in rem*.

8

"'[R]es judicata encompasses two separate but linked preclusive doctrines: (1) true *res judicata* or claim preclusion and (2) collateral estoppel or issue preclusion.'" <u>Houston Prof'l Towing Ass'n v. City of Hous.</u>, 812 F.3d 443, 447 (5th Cir. 2016) (quoting <u>Comer v. Murphy Oil USA, Inc.</u>, 718 F.3d 460, 466-67 (5th Cir. 2013)).  "True *res judicata* 'bars the litigation of claims that either have been litigated or should have been raised in an earlier suit,' while collateral estoppel 'precludes relitigation of only those issues actually litigated in the original action, whether or not the second suit is based on the same cause of action.'" <u>Id.</u> (quotations and citations omitted).[4]

A dismissal without prejudice based on *forum non conveniens* generally does not bar a second action in another venue. 18A Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 4436 (2d ed. 2015).   However, the *forum non conveniens* judgment precludes relitigation of the precise venue issue that led to the initial dismissal. <u>Id.</u>  In other words, "[d]ismissal on *forum non conveniens* grounds does not establish claim preclusion; ordinarily it cannot work issue preclusion as to other courts because the convenience issues are intrinsically different, but issue preclusion is appropriate if the issue actually remains the same." <u>Id.</u> Applying these principles, the United States Court of Appeals for the Fifth Circuit has held that "a plaintiff may not relitigate a *forum non conveniens* issue unless he can show some objective facts that materially alter the

---

[4] Hornbeck argued the *res judicata* issue as true *res judicata* or claim preclusion, which "'has four elements: (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions.'" <u>Houston Prof'l Towing</u>, 812 F.3d at 447 (quoting <u>Comer</u>, 718 F.3d at 467).  The Texas district court action was not adjudicated on the merits. <u>See</u> <u>Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.</u>, 127 S.Ct. 1184, 1192 (2007) (A *forum non conveniens* dismissal "is a non-merits ground for dismissal" because it "den[ies] an audience to a case on the merits" and "is a determination that the merits should be adjudicated elsewhere.").  Therefore, true *res judicata* or claim preclusion does not apply and the court will analyze the *res judicata* issue as collateral estoppel or issue preclusion.

considerations underlying the previous resolution."[5] Villar v. Crowley Maritime Corp., 990 F.2d 1489, 1498 (5th Cir. 1993), *abrogated on other grounds*, Marathon Oil Co. v. Ruhrgas, 145 F.3d 211 (5th Cir. 1999).

Collateral Estoppel or "issue preclusion" is a type of *res judicata* that bars "'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." Taylor v. Sturgell, 128 S.Ct. 2161, 2171 (2008) (quoting New Hampshire v. Maine, 121 S.Ct 1808, 1814 (2001)). Collateral estoppel is intended to protect parties from multiple lawsuits, to avoid the possibility of inconsistent decisions, and to conserve judicial resources. Lytel v. Household Mfg., Inc., 110 S.Ct. 1331, 1337 (1990) (citing Montana v. United States, 99 S.Ct. 970, 973-74 (1979)). To establish collateral estoppel, a party must show "(1) that the issue at stake [is] identical to the one involved in the prior litigation; (2) that the issue has been actually litigated in the prior litigation;

---

[5] Under the *forum non conveniens* doctrine, a court may decline to exercise jurisdiction over a case properly before it if the case may be more conveniently tried in another forum. In re Volkswagen of Am., Inc., 545 F.3d 304, 313 (5th Cir. 2008). The *forum non conveniens* analysis begins with a determination of whether an adequate and available alternative forum exists. Piper Aircraft Co. v. Reyno, 102 S.Ct. 252, 265 n. 22 (1981); DTEX, LLC v. BBVA Bancomer, S.A., 508 F.3d 785, 794 (5th Cir. 2007). The alternative forum is available if "the entire case and all parties can come within the jurisdiction of that forum." Gonzalez v. Chrysler Corp., 301 F.3d 377, 379 (5th Cir. 2002) (citation omitted). A forum is adequate if the parties will not be deprived of all remedies or treated unfairly. See Alpine View Co. Ltd. v. Atlas Copco AB, 205 F.3d 208, 221 (5th Cir. 2000). If the defendant demonstrates that an available and adequate alternative forum exists, the court must then weigh private and public interest factors. McLennan v. Am. Eurocopter Corp., Inc., 245 F.3d 403, 424 (5th Cir. 2001). The private interest factors, which relate primarily to the convenience of the litigants, are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and, (4) all other practical problems that make trial of the case easy, expeditious and inexpensive. Syndicate 420 at Lloyd's of London v. Early Am. Ins. Co., 796 F.2d 821, 831 (5th Cir. 1986). The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies decided at home; (3) the familiarity of the forum with the law that will govern the case; and, (4) the avoidance of unnecessary problems of conflict of laws or the application of foreign law. Id. The defendant bears the burden of persuading the court that the suit should be dismissing on *forum non conveniens* grounds. DTEX, 508 F.3d at 794.

and (3) that the determination of the issue in the prior litigation has been a critical and necessary part of the judgment in that earlier action." Rabo Agrifinance, Inc. v. Terra XXI, Ltd., 583 F.3d 348, 353 (5th Cir. 2009) (citing Wehling v. CBS, 721 F.2d 506, 508 (5th Cir. 1983)).  "The parties to the suits need not be completely identical, so long as the party against whom estoppel applies had the full and fair opportunity to litigate the issue in the previous lawsuit." Id. (citing Wehling, 721 F.2d at 508).

###    A.  Actually Litigated and Necessary to the Judgment

In this case, the *forum non conveniens* issue was litigated in the Texas district court action and was a necessary part of the dismissal on that ground.  Estoppel in this action would be applied against NHC.  The Cotemar interests were the plaintiffs in Texas action. At that time, the Cotemar interests were cooperating with NHC, and NHC provided the Cotemar interests' attorneys.  Indeed, NHC states repeatedly in its filings that it had no need to proceed against Hornbeck or the BEAUFORT in its own name while the Cotemar interests were cooperating with NHC because the Cotemar interests were representing NHC's interest in the suit.  Thus, NHC had the full and fair opportunity to litigate the *forum non conveniens* issue in the Texas action by virtue of its relationship with the Cotemar interests.

###    B.  Identity of the Issue

The United States Court of Appeals for the Fifth Circuit has held that the "'relitigation of an issue is not precluded unless the facts and the legal standard used to assess them are the same in both proceedings.'" Pace v. Bogalusa City Sch. Bd., 403 F.3d 272, 290 (5th Cir. 2005) (quoting Southmark Corp. v. Coopers & Lybrand (In re: Southmark Corp.), 163 F.3d 925, 932 (5th Cir. 1999)).  Further, "[i]ssues of fact are not 'identical' or 'the same,' and therefore not preclusive, if the legal standards governing their resolution are 'significantly different.'" Id. (citations omitted).

The legal standard applied by the Texas district court, namely the Fifth Circuit's *forum non conveniens* balancing test, is the same one that would be applied by this court.  The material facts in the two cases are virtually indistinguishable, except that the Texas action was brought against the Hornbeck entities, *in personam,* and this action is against the BEAUFORT, *in rem.*

In Cook v. Champion Tankers AS (Cook II), 2013 WL 1629136 (N.D. Cal. 4/16/2013), the court considered whether the plaintiff, Thomas Cook, was barred from relitigating the *forum non conveniens* issue under the collateral estoppel doctrine.  On April 2, 2009, Cook was aboard the S/V PRINCESS TAIPING, which was operating in international waters off the coast of Taiwan, when it was struck by the M/V CHAMPION EXPRESS and sank. Id. at *1. The M/V CHAMPION EXPRESS was managed by Champion Tankers AS and owned by Champion Shipping AS. Id.  Cook and five other plaintiffs filed the first action against Champion Tankers and Champion Shipping in the United States District Court for the Eastern District of California. Id.  Plaintiffs secured *quasi in rem* jurisdiction over Champion Shipping, but did not serve Champion Tankers. Id. (citing Cook v. Champion Shipping AS (Cook I), 732 F.Supp.2d 1029 (E.D. Cal. 2010)).   On Champion Shipping's motion, the court dismissed Cook I on the grounds of *forum non conveniens* finding that Hong Kong was a more appropriate forum. Id. (citing Cook I, 732 F.Supp.2 at 1038).  The United States Court of Appeals for the Ninth Circuit affirmed. Id. at * 2 (citing Cook v. Champion Shipping AS, 463 Fed. Appx. 626 (9th Cir. 2011)).

Cook filed a second action against Champion Tankers, *in personam*, and Champion Tankers moved to dismiss Cook's claims on the ground that it was barred by collateral estoppel on the *forum non conveniens* issue. Id.  In examining whether the issues were identical, the court found that it was immaterial that personal jurisdiction in Cook I was *quasi in rem*, while it was *in personam* in Cook

12

II, noting that "courts routinely hold that a determination in an *in rem* action can have preclusive effect in a subsequent *in personam* action." Id. at *4.  The court held that Cook was precluded from relitigating the *forum non conveniens* issue. Id. at *6.

In Anastasiadis v. Mecom, 265 F.Supp. 959 (S.D. Tex. 1966), the court held that a *forum non conveniens* dismissal of an *in rem* suit finding that Greece was a more appropriate forum than the United States precluded relitigation of the *forum non conveniens* issue in a subsequent *in personam* action against the vessel's owner.  The court cited Burns Bros. v. The Cent. R.R. of N.J., 202 F.2d 910, 913 (2d Cir. 1953), in which the United States Court of Appeals for the Second Circuit stated that it has "decided that a decree *in rem* is a bar to a suit *in personam*, and [it] cannot see why the rule should not work both ways." See Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A., 56 F.3d 359,  366 (2d  Cir. 1995) ("Burns Bros. and its predecessors should be read simply to apply *res judicata* principles to successive *in rem* and *in personam* actions. . .").  The court also cited Cont'l Grain Co. v. The FBL-585, 80 S.Ct. 1470, 1473 (1960), in which the Supreme Court of the United States explained that the "long-standing admiralty fiction that a vessel may be assumed to be a person for the purpose of filing a lawsuit and enforcing a judgment" was developed for the purpose of allowing "actions against ships where a person owning the ship could not be reached," and it is not relevant in determining where a case can most conveniently be tried.  Indeed, the Court stated "[a] fiction born to provide convenient forums should not be transferred into a weapon to defeat that very purpose." Cont'l Grain, 80 S.Ct. at 1473.

This jurisprudence demonstrates that the distinction in admiralty law between an action *in personam* against the vessel owner and an action *in rem* against the vessel is immaterial to the analysis regarding the collateral estoppel or issue preclusion effect of a dismissal on *forum non*

*conveniens* grounds.[6]  The Texas district court found that Mexico is a more appropriate forum than a forum in the United States, not just Texas, and all of the material facts of this matter are the same as those presented in the Texas matter.  Therefore, Hornbeck's motion to dismiss is GRANTED, and this matter is DISMISSED WITHOUT PREJUDICE.

### CONCLUSION

**IT IS HEREBY ORDERED** that Norwegian Hull Club's Motion to Approve Assignment of the Letter of Undertaking (Doc. #122) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Dismiss (Doc. #90) is **GRANTED**, and plaintiffs' claims against the M/V HOS BEAUFORT, *in rem*, are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that the M/V HOS BEAUFORT's Motion to Dismiss for *Res Judicata* (Doc. #61) is **GRANTED**, and this matter is **DISMISSED WITHOUT PREJUDICE.**


New Orleans, Louisiana, this  25th  day of May, 2016.


**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**

---

[6] NHC argues that the *forum non conveniens* considerations in this case are materially different from those in the Texas case because the Texas district court did not have *in rem* jurisdiction over the vessel and Mexican law does not recognize an *in rem* action.  In Piper Aircraft, 102 S.Ct. at 261, the Supreme Court of the United States held that a plaintiff may not defeat the application of the *forum non conveniens* doctrine by merely "showing that the substantive law that would be applied in the alterative forum is less favorable to the plaintiff[] than that of the present forum."  Although Mexican law may not recognize an *in rem* action against the BEAUFORT, NHC can pursue claims against the Hornbeck entities, *in personam*, under Mexican law.

14